IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL H. HAGAN,

        Plaintiff/Counter-Defendant,

v.                                                                                CIV 12-0031 KBM/RHS

TIMOTHY ROSE, and
ROSE LAW FIRM, PC,
a New Mexico professional corporation,

        Defendant/Counter-Claimant.

# **MEMORANDUM OPINION AND ORDER**

    In this diversity action, Plaintiff Michael Hagan seeks damages from his former attorney exclusively under state law. This matter is before the Court on Plaintiff's two motions for summary judgment, both of which rely on a state criminal trial judge's finding of ineffective assistance of counsel.[1] Plaintiff seeks to use that ruling as conclusive proof of his claim for negligence, and as a conclusive defense to Defendants' counterclaim for malicious abuse of process. *See Docs. 23, 42.* He also moves to strike the affidavit submitted of Defendant Timothy Rose, characterizing it an unsupported "sham." The affidavit reiterates the allegations of the counterclaim and is submitted in support for Defendants' argument that factual issues preclude summary judgment in Plaintiff's favor. *See Doc. 27.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 6, 10, 11.* For the reasons below, the Court denies both motions.

---

[1] Despite the parties' disjointed submissions of portions of the Transcript, together *Docs. 33-1 & 33-2* provide a complete transcription of the April 19, 2010 evidentiary hearing in the criminal proceedings in New Mexico state court. The Court pin cites to the court reporter's internal pagination.

## I.  Background

This is one of the latest actions that stem from the sale of a harness supply company in the horseracing industry and the subsequent long, tortuous, and contentious history in both civil and criminal actions.  In an effort to avoid confusion, I will distill the facts that are relevant in deciding these motions.

Plaintiff Hagan secured a judgment in his favor in California, retained a New Mexico collection company, and enlisted the assistance of the U.S. Marshal, to seize four racehorses located in New Mexico to satisfy this judgment.  *See e.g.*, Opening Brief at 4-5.  In June 2009, the State of New Mexico deemed certain aspects of Plaintiff's judgment-collection efforts criminal, charged him with eight counts of larceny of livestock and violation of brand inspection laws, and set his bond at $13,000.00.

Plaintiff hired the Rose Law Firm to represent him in the criminal matter.  He accepted an offer to plead no contest, with "no agreement as to sentence," but with the State's promise to recommend a suspended sentence if Hagan agreed to testify and cooperate against any other persons currently charged or charged in the future in that matter.  *Doc. 25-1* at 4.  However, the agreement provided that the State would oppose a conditional discharge and request restitution, and that Hagan was to "fully cooperate in the return of all winnings from racing the horses after they were removed from Zia Park."  *Id.*

Plaintiff signified his "acceptance" of the aforementioned plea by signing it either on December 29, 2009 or backdating his signature to that date so that it appeared he accepted before the offer expired.  *See Doc. 25-1* at 4.  He formally entered into the plea, in person, in court, on January 4, 2010, the day his trial was to have taken place.  *See Transcript* at 49; *see also State v.*

*Hagan,* D-506-CR-200900222 (docket entry 9/21/09 – pretrial conference and trial set for week of January 4, 2010).

On one of those two dates (Rose believed it was January 4th), Rose advised Plaintiff that he had accepted a position with the district attorney, and that Rose would not be able to continue with Hagan's case if it "was still ongoing after March 1st." *Transcript* at 49-50.  According to Plaintiff, the day of the entry of the no contest plea in, "Rose introduced [him] to [Beauvais and] said he would be handling my law work from now on." *Id.* at 75; *see also id.* at 47; *State v. Hagan,* D-506-CR-200900222 (docket entry 1/4/2010 – guilty plea hearing; docket entry 01/25/2010 "substitution of counsel – J. Robert Beauvais in lieu of Tim Rose for Michael Hagan").

Shortly after entering his appearance, Beauvais filed a motion to withdraw Hagan's plea based on allegations that Rose had provided ineffective assistance of counsel.  Hagan prevailed after an evidentiary hearing before District Judge William Shoobridge. *See Doc. 24-8* at 1-3 ("*Decision Memo*").  Three witnesses testified at the hearing – Rose, Plaintiff, and attorney Jon Fredlund, who testified as an expert.  The prosecution did indicate early in the hearing that it intended to call Rose as one of its witnesses, but the rest of the hearing proceeded as though Rose was Beauvais' witness.  For example, Beauvais is the one who conducted "direct" and "redirect" of Rose.  Furthermore, the trial judge overruled Beauvais' objection that the prosecution was "leading" Rose because Rose was not considered to be the prosecution's witness. *See Transcript* at 4, 26-27, 30, 60. 59.

Rose was the first to testify.  When the court first called him to participate by phone, he was about to make an appearance in court.  When the court later called him, he was attending his son's baseball game, and testified from there via cell phone. *See id.* at 4, 25-34.  Evidently, Rose

3

remained on the phone and listened to Plaintiff's and Fredlund's testimony thereafter.[2] It appears that Fredlund probably also heard the testimony of Plaintiff and Rose before he testified.[3]

Judge Shoobridge's decision specifically noted Plaintiff's and Rose's diametrically-opposed views on what transpired before Plaintiff accepted the plea. That disparate version of events is repeated in the parties' pleadings and arguments here. *See, e.g., Decision Memo* at 1-2; *Doc. 1* ("Complaint"); *Doc. 5* ("Counterclaim").

Hagan complained that he was compelled to enter a plea because Rose had not prepared any witnesses for trial or given notice of an alibi defense. Mr. Rose, however, testified that he was prepared to proceed to trial on the date the plea was entered and chose not to pursue an alibi defense because there was no need to do so. Rose understood that the prosecution did not need to prove Plaintiff was physically present in New Mexico when the horses were seized and, in any event, there was no dispute that Plaintiff was not present. *See Transcript* at 32, 34, 43-44, 47, 54-55.

Hagan faults Rose for not considering an "estoppel by entrapment" argument. Rose indicated that he chose not to because it was not a complete defense to the crimes, and Rose had other estoppel arguments in mind for certain issues should Plaintiff be found guilty of anything. *See id.* at 45-47. In response to Hagan's other complaints, Rose testified that he was aware that he could have challenged certain matters prior to trial, but he did not file any motions because his client was "financially strapped" and having "money problem issues." *Id.* at 39, 40. In addition,

---

[2] *See Transcript* at 26 ("The Court: Was Mr. Rose going to listen to this? [Prosecutor] Well, I think he should I think he should hear what his client has to say about it."); *id.* at 67 (after Rose's testimony concludes: "The Court: Mr. Rose, Counsel requests you remain on the phone. Mr. Rose. Okay.").

[3] *See id.* at 7 ("The Court: . . . the rule on expert witnesses allows the Court to consider anything that might assist [so] I would allow Mr. Fredlund [to testify]. I'll allow Mr. Rose, if he wants to testify, to testify."); *id.* at 26 ("The Court: All right. Mr. Rose, I'm gonna swear you in as a witness along with Mr. Hagan and Mr. Fredlund so if all of you would raise your right hand and be sworn.").

he thought that the trial judge would be in a better position to make rulings on these issues after he had heard all the evidence at trial. *See id.* at 52-54, 61-62. Rose testified that he and Hagan "discussed . . . the possibility of filing pretrial motions and the benefits of possibly waiting until trial to have that done, and we decided to wait and litigate those issues at trial." *Id.* at 39. The "plan was to argue [those matters] during the directed verdict." *Id.*; *see also id.* at 52-54, 64-66.

In Rose's view, the matters to be raised at trial included:  Plaintiff could not be held vicariously liable for inspections when the horse hauler made that decision; a "single larceny theory," meaning seizure of the four horses constituted one crime and charges for each separately violated double jeopardy; "justifiable reliance;" and possibly "collateral" and "equitable" estoppel, based on the judgment in the California breach of contract action. *See id.* at 39, 40, 42-47 52, 55-56. As for possible defense witnesses, Rose originally listed fourteen as part of his investigation of the case, *see id.* at 33, but after speaking the Plaintiff, Rose said they "decided we were not gonna call any witnesses. If we needed anybody to testify it would be [Plaintiff] himself," *id.* at 66.

Rose further testified that in December 2009 with trial quickly approaching, Plaintiff called Rose and "direct[e]d [him] to ask for a plea offer from the State," which Rose did. *Id.* at 48. Rose contends that he advised Plaintiff that entry of a conditional discharge was the judge's decision, but that in his opinion, if the Judge knew the facts of the case and the mitigating circumstances, Rose could not see him "entering anything other than a conditional discharge." *Id.* at 48-49. Rose also advised Hagan that if he did decide to plea, restitution was going to be a "complicated issue." *Id.* at 51. In the end, however, Rose testified that he "[a]bsolutely [did] not" tell Plaintiff that he "needed to plead this case out." *Id.* at 48. Instead, Rose advised Hagan that it "was his call whether to take the plea deal or not," but that Rose felt confident in the case

5

and that he specifically "advis[ed] [Hagan] *to proceed to trial.*" *Id.* at 50-51 (emphasis added); *see also id.* at 62-63

The expert actually agreed with Rose's assessment that the best course was to proceed to trial. Fredlund testified, "from my understanding of the facts it didn't seem likely that [Hagan] would really be convicted of anything, and so that counseling someone who is in your opinion not guilty to plead guilty is not necessarily a good idea, but . . . it's – ultimately . . . the defendant's decision and sometimes the stress of these types of things is so great that they just want to get them over."). *See id.* at 92.

Plaintiff's testimony before the trial judge was brief, conclusory, directed at some of the points in Rose's testimony. Plaintiff did not, however, actually contradict Rose's contention that he had advised his client to try the case and to *not* take the plea. In substantive part, Hagan's testimony related his belief that he was forced to take the plea because of his perception that Rose was unprepared for trial and would be abandoning him. *See Transcript* at 68-72.

The transcript of Plaintiff's in-court plea hearing is not part of the record, but Plaintiff admitted on cross-examination at the subsequent evidentiary hearing that he "knew at the time of the plea that the Judge was free to sentence as he saw fit, in accordance with the law." *Id.* at 74. He also testified on cross-examination that Rose did not explain the advantages and disadvantages of taking the plea. The only reason why he accepted the deal was because Rose assured him that "regardless of what this plea says when it is our opportunity to get up and talk that the Judge would give us a conditional release." *Id.* at 72-73. He contradicted his testimony on direct examination that he was to be left without representation by, as mentioned at the outset, unequivocally stating that Rose passed him over to Beauvais' representation on the day that he entered the plea. *Id.* at 75.

Judge Shoobridge issued his decision two days after the hearing. *See State v. Hagan,* D-506-CR-200900222 (docket entry 4/21/10). Even though there was no testimony by Plaintiff on this point, Judge Shoobridge credited the proposition that Plaintiff was "tole (sic) by Mr. Rose he could either accept [the plea] or find other counsel." *Decision Memo* at 2. Plaintiff's testimony makes clear is that his concern was securing a "conditional discharge," something that he knew from the plea that the State would oppose and that was in the judge's discretion whether to grant, but that Rose believed was the likely outcome.

Judge Shoobridge's opinion gave weight to his belief that Rose's alleged "plea or else" statement is what troubled the expert. "Mr. Fredlund was most troubled by the undisputed fact that the Defendant was told by Mr. Rose on the day he was reviewing the proposed Plea and Disposition agreement that if he did not accept its terms, Mr. Rose would no longer represent him because he was closing his law practice." *Decision Memo* at 2. Again, this finds no support in the actual testimony. When Beauvais asked him his opinion about an attorney "telling your client on the day he's there to plea that you can't represent him anymore," Fredlund responded:

> "that to me is what is the most troubling about what I've heard . . . placing him in a position where he doesn't you know, there's two or three days before trial and he doesn't know who's gonna represent him if anyone's gonna represent him or what the court's gonna do; that to me is – without making it very clear to him that, hey, I may not be around but someone else will, you're not gonna be left sort of twisting in the wind; to me that, from what I've heard, is one of the most troubling things about it."

*Transcript* at 90. This total abandonment picture is not what the testimony reflected, however. The record clarifies that Rose testified he was ready to proceed to trial as scheduled but that he could not "be around" later for a "complex restitution hearing" if it was needed. Even Mr. Beauvais reminded Fredlund that Plaintiff testified that after the plea he immediately arranged for new counsel – "that day." *Id.* at 90-91.

7

Judge Shoobridge also credited Plaintiff's testimony that he "would not have pleaded no contest . . . had he known of all his available legal defenses." *Decision Memo* at 1. Significantly, however, he does not mention that the plea disposition actually grouped the larceny charges so as to avoid the very double jeopardy argument Beauvais claimed Rose neglected. The docket entry provides:

> Plea & Disposition Agreement Plea And Disposition Agreement /Shoobridge Defendant Agrees To Plead No Contest To Larceny (Livestock), Shipping, Driving Or Receiving Livestock Out Of State Without An Inspection (2 Counts) ***Counts 2, 3, 4, 7 And 8 Are Dismissed.***

*Id.* (emphasis added). That means Judge Shoobridge accepted a plea to three counts of a eight-count indictment and dismissed these highlighted counts:

> Criminal Information -Luce Count 1: Larceny (Livestock) - 3rd Degree Count ***2: Larceny (Livestock) - 3rd Degree Count 3: Larceny (Livestock) - 3rd Degree Count 4: Larceny (Livestock) - 3rd Degree Count*** 5: Shipping, Driving Or Receiving Livestock Out Of State Without An Inspection - 4th Degree Count 6: Shipping, Driving Or Receiving Livestock Out Of State Without An Inspection - 4th Degree Count ***7: Shipping, Driving Or Receiving Livestock Out Of State Without An Inspection - 4th Degree Count 8: Shipping, Driving Or Receiving Livestock Out Of State Without An Inspection - 4th Degree***

*Id.* (docket entry 6/26/09) (emphasis added). Plaintiff thus pleaded no contest to one count of livestock larceny, and two counts of inspection violations.

Finally, Judge Shoobridge cited *State v. Carlos,* 140 N.M. 688 (N.M. App. 2006), and *State v. Barnett,* 125 N.M. 739, (N.M. App. 1998), both of which apply the two-prong test of *Strickland v. Washington,* 466 U.S. 668 (1984). He relied on the defense theory of what constituted substandard conduct by Mr. Rose – inadequate trial preparation, failing to file pretrial motions, not disclosing an alibi defense, not naming defense witnesses, not disclosing any

8

exhibits, not advising restitution was improper, failing to raise possible defenses such as merging the larceny counts and double jeopardy and entrapment by estoppel.  He did so without any discussion of Rose's testimony, why he discredited that testimony (particularly where he advised his client to *not* take the plea), the legal sufficiency of these failures, the fact that Rose testified about the defense strategy in place for trial, and, most significantly, what was erroneous about Rose's advice concerning the plea.

Moreover, the judge made no mention of the plea proceedings and representations made by Plaintiff to the court at that time.  He simply considered the possibility of ineffectiveness at some point in the proceedings as dispositive of whether Plaintiff's plea was voluntary.  *See Decision Memo* at 1, 2.  In the context of a guilty plea, however, the paramount issue is counsel's conduct during the course of the plea negotiations.  *See, e.g., State v. Edwards,* 141 N.M. 491, 497, 157 P.3d 56, 62 (N.M. App. 2007).  And, where the claim is that counsel was deficient in failing to discuss any possible defenses prior to a plea, Judge Shoobridge was required to examine the merits of each of the defenses.  *See State v. Hunter,* 140 N.M. 406, 411-14, 143 P.3d 168, 173-76 (N.M. 2006).

After he allowed Plaintiff to withdraw his plea, Judge Shoobridge dismissed six of the eight counts on double jeopardy grounds, presumably the overlapping larceny and inspection counts since the four horses were transported at the same time.  He eventually dismissed another count before trial, presumably the inspection count on the ground that the horse hauler made that decision.  He directed a verdict on the final count during trial for lack of sufficient evidence on intent to steal.  *See, e.g., Complaint,* ¶¶ 39-45.

9

## II. Overview Of Applicable Standards

Plaintiff is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also, e.g., Kimzey v. Flamingo Seismic Solutions Inc.,* ___ F.3d ___, ___, No. 11-6211, 2012 WL 4857044, at *2 (10th Cir. Oct. 15, 2012). In "applying this standard," the Court views the evidence and reasonable inferences that flow from it, "in the light most favorable to the nonmoving party." *Herrod v. Wilshire Ins. Co.,* ___ Fed. App'x ___, ___, No. 11-4029, 2012 WL 4820722, at *3 (10th Cir. Oct. 11, 2012) (internal quotations and citation omitted). "A factual dispute is only 'genuine' if the evidence and the inferences . . . are 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Arencibia v. Barta,* ___ F. App'x ___, ___, No. 11-3376, 2012 WL 4513233, at *3 (10th Cir. Oct. 3, 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

If Plaintiff has made a "properly supported motion for summary judgment," *Anderson,* 477 U.S. at 250, Defendants "'may not rest on [their] pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [they] carr[y] the burden of proof.'" *Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010)). Under Rule 56(e), "an affidavit submitted in support of or in opposition to a motion for summary judgment 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.'" *Sperry v. Werholtz,* 413 F. App'x 31, 35-36 (10th Cir. 2011) (quoting FED. R. CIV. P. 56(e)(1)). However, the Court will disregard affidavits deemed to be an attempt to create a "sham fact issue." *See, e.g., Juarez v. Utah,* 263 F. App'x 726, 733-34 (10th Cir. 2008).

10

Sitting in diversity, this Court applies New Mexico law to determine the preclusive effect of the criminal trial judge's decision.[4]  Significantly for the analysis below, "'[f]ederal law and New Mexico law are not divergent on claim preclusion doctrine,'" and both federal and state precedent are applicable in analyzing this case.  *Deflon v. Sawyers,* 139 N.M. 637, 640 (N.M. 2006) (quoting *Moffat v. Branch,* 138 N.M. 224, 228 (N.M. App. 2005)).

### III.  Analysis

#### A.  *Motion To Strike*

Plaintiff moves to strike Rose's affidavit as "self-serving, uncorroborated . . . without reference to the record or specific supporting facts which would be admissible at trial" and as a "sham" in light of his prior testimony at Judge Shoobridge's hearing.  *See Doc. 28* at 1-2.  The affidavit is but a scant eight paragraphs.  Plaintiff makes the same conclusory and unsupported objections to each paragraph – that they are "self-serving," "not supported by the record," "immaterial and irrelevant," and "present an insufficient defense under Rule 12(f)."[5]  *See Doc. 33* at 3-6.

---

[4] *See, e.g., Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508 (2001) ("federally prescribed rule of decision [is] the law that would be applied by state courts in the State in which the federal diversity court sits."); *Mena v. Safeco Ins. Co.,* 412 F.3d 1159, 1165 n.2 (10th Cir. 2005) (quoting same and noting that same result would obtain under either federal common law or Montana state law); *Mascarenas Enters., Inc. v. City of Albuquerque,* No. ***,  2012 WL 3292396, at *3 (10th Cir. Aug. 14, 2012) ("We apply New Mexico law . . .  The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, 28 U.S.C. § 1738, which directs a federal court to refer to the preclusion law of the State in which judgment was rendered.")  (internal quotation marks omitted).

[5]   The Rule 12(f) authority to strike applies to pleadings, not to motions or affidavits.  *See Ysais v. New Mexico Judicial Standard Comm'n,* 616 F. Supp. 23 1176, 1184 (D.N.M. 2009) ("Only material included in a ❛pleading❜ may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike.") (quoting 2 JAMES MOORE, MILTON I. SHADURUPDATES & MARY P. SQUIERS, MOORE'S FEDERAL PRACTICE § 12.37[2] (3rd ed. 2008); *see also* FED. R. CIV. P. 12(f) ("court may strike from a pleading an insufficient defense"); FED. R. CIV. P. 7(a)(1)-(7) (only "pleadings" under the Rules are complaints, answers and rely to answer if ordered by court).

To the contrary, my review of the affidavit finds each paragraph to be material and relevant to some issue in this case. Moreover, simply labeling an affidavit "self-serving" is insufficient grounds to strike an affidavit. The reason should be obvious. Rather, a factually-specific affidavit based on personal knowledge and supported either by personal knowledge, an exhibit, or by the record per the transcript of the evidentiary hearing such as is Rose's, is "legally competent to oppose summary judgment, notwithstanding its inherently self-serving nature." *Williams v. Shields,* 77 F. App'x 501, 503 (10th Cir. 2003); *see also Sanchez v. Vilsack,* ___ F. 3d ___, ___, No. 11-2118, 2012 WL 4096250, at 7, n.4 (10th Cir. Sep. 19, 2012).

Plaintiff contends that certain paragraphs "contradict" the record but, again, even a cursory comparison of the transcript from the evidentiary hearing and the affidavit reveal that Rose's testimony is consistent. Thus, the affidavit cannot qualify as a "sham" as a matter of law, and there is no reason for the Court to apply the "*Franks*" factors. *See, e.g., Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950, 956 (10th Cir. 2012) ("To be disregarded as a sham, an affidavit must contradict prior sworn statements. . . . Ms. Hernandez's affidavit does not contradict her prior deposition testimony.")

Even if the affidavit could be considered contradictory in some respects, a "Court is not free to disregard [an] affidavit simply because it conflicts with [a] prior sworn statement." *Cooks v. Univ. of Kansas,* No. CIV.A.11-2184-KHV, 2012 WL 4747152 at *7 (D. Kan. Oct. 4, 2012); *see also, e.g., S.E.C. v. Smart,* 678 F.3d 850, 856, n. 6 (10th Cir. 2012) (affidavit that conflicts with prior sworn statements not automatically disregarded) (quoting *Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.,* 330 F.3d 1275, 1282 (10th Cir. 2003)). Indeed, it is the "unusual" case where an affidavit raises a sham issue. *Law Co., Inc. v. Mohawk Const. and Supply Co., Inc.,* 577 F.3d 1164, 1169 (10th Cir. 2009) (quoting *Franks,* 796 F.2d at 1237).

### B. Material Issues of Fact Preclude Summary Judgment

The parties' versions of what transpired during the criminal proceedings are diametrically opposed. Plaintiff moves for summary judgment on Defendants' counterclaim arguing that they have "not . . . a single item of admissible evidence that corroborates Rose was ready for trial and advised against the plea." *Doc. 24* at 9. That argument presupposes striking the affidavit, which the Court declines to do. Defendant Rose testified based on personal knowledge that: (1) Plaintiff pressured him to avoid trial and secure a plea; (2) Plaintiff accepted that plea despite Rose's advice to reject it and proceed to the trial; and (3) Rose was adequately prepared for trial and confident it would result in acquittal. It shall be for the jurors, not the Court, to decide which version of the facts to believe.

### C. Issue Preclusion is Not Applicable

As a second ground for summary judgment, Plaintiff attempts to invoke collateral estoppel. He seeks to use Judge Shoobridge's ineffectiveness finding as conclusive on the issue of Rose's competence/negligence for his malpractice claim in Count I and to use it defensively to preclude Defendants from pursuing the counterclaim for malicious abuse of process. Hagan contends this case should proceed to a jury trial on the issue of his amount of his damages only. *See Doc. 24* at 9-14; *Doc. 43* at 2-7; Doc. 46 at 6.

For collateral estoppel to apply here, Plaintiff must show that: the criminal action and this cause of action are different; Rose's competency/negligence was actually litigated and necessarily determined in the criminal action; and Rose was a party to, or in privity with a party to, the criminal action. *See, e.g., Mascarenas,* 275 P.3d at 789 (citing *Shovelin v. Cent. N.M. Elec. Coop., Inc.,* 115 N.M. 293, 298, 850 P.2d 996, 1001 (1993)); *Guttman v. Khalsa,* 669 F.3d 1101, 1109 (10th Cir. 2012). Even if Plaintiff meets his burden of establishing these threshold

13

requirements, the inquiry is not over. If, for example, Rose establishes that did not have a "full and fair opportunity" to litigate his competency in the criminal proceedings, collateral estoppel will not apply. *Mascarenas,* 275 P.3d at 789 (citing *Shovelin,* 115 N.M. at 297, 850 P.2d 996 at 1000); *see also, e.g., O'Brien v. Mitchell,* ___ F. Supp. 2d ___, ___, No. CIV 11-0409 JB/WDS, 2012 WL 3150371, at *22 (D.N.M. Jul. 21, 2012) (and cases cited therein). Finally, it is well-settled that application of the doctrine is in the Court's discretion. *See, e.g., O'Brien,* 2012 WL at *23 (and cases cited therein).

      Every step of the analysis precludes Plaintiff's collateral use of Judge Shoobridge's decision. For example, Plaintiff fails to establish that the issues to be decided here were necessarily the same that Judge Shoobridge decided. To establish "professional negligence" or "attorney malpractice" Plaintiff must show: "(1) the employment of the defendant attorney, (2) the defendant attorney's neglect of a reasonable duty, and (3) a loss to the plaintiff proximately caused by the defense attorney's neglect." *Bassett v. Sheehan,* 144 N.M. 178, 180, 184 P.3d 1072, 1074 (N.M .App. 2008). In addition, Plaintiff seeks punitive damages for Rose's conduct that allegedly was "willful and without justification or excuse." Complaint, ¶ 50. As discussed in earlier, Judge Shoobridge did not identify any duty Rose neglected, discuss whether Rose's strategy was "reasonable," decide Rose's state of mind, or make a decision of proximate cause for the economic damages Plaintiff claims here. *See id.,* ¶ 49. Thus, Plaintiff fails to demonstrate that the judge actually or necessarily decided the issues the jury will face here.

      It appears that there are circumstances when criminal proceedings can be used for collateral estoppel purposes. *See, e.g., O'Brien,* 2012 WL at *22 (noting criminal actions can be used collaterally in 42 U.S.C. § 1983 proceedings under *Allen v. McCurry,* 449 U.S. 90 (1980)). Though the parties do not discuss it, courts that recognize the *Zeidwig* line of cases specifically

14

approve of the collateral use of a finding of ineffective assistance of counsel from the criminal context in the civil malpractice context.

Nevertheless, Rose was not a "party" to the criminal hearing or "in privity with" the prosecutor such that "the party/parity" requirement remains an obstacle to application of collateral estoppel. "For a claim to be barred by collateral estoppel, '(1) the party against whom collateral estoppel is asserted must have been a party in or in privity with a party to the original action.'" *Larsen v. Farmington Mun. Schs.,* 148 N.M. 926, 929, 242 P.3d 493, 496 (N.M. App. ,2010) (quoting *DeLisle v. Avallone,* 117 N.M. 602, 605, 874 P.2d 1266, 1269 (N.M. App. 1994)). At least one court has held that a witness to a proceeding does not qualify as a party/in parity as a matter of law. *See Wadell v. Stevenson,* 683 S.W.2d 955, 959 (Ky. App. 1984) ("we held in *Campbell v. McCoy, Ky.,* 306 S.W.2d 843 (1957), that the doctrine of *res adjudicata* does not apply to one who merely participates in a case as a witness").

*Zeidwig v. Ward* , 548 So.2d 209 (Fla. 1989*)* is no help to Plaintiff in that regard. There, the criminal defendant who had lost an ineffectiveness argument in post-conviction proceedings later brought a malpractice action against the allegedly ineffective attorney. The attorney, whose conduct was the subject of the state ruling, invoked collateral estoppel defensively to preclude the criminal defendant from relitigating the issue on which he previously lost. The court agreed, and in so holding, specifically noted that the attorney was not a party or in parity with the parties to the post-conviction proceedings. There is no material difference between that situation and this one.

In addition, even if Rose's testimony could be considered as supporting the prosecution's position, under no stretch of the facts can he be deemed to have "assumed control over" or "influenced" the prosecution's litigation of the ineffectiveness issue, "took the laboring oar" from

the prosecution on the same, was the prosecutor's "successor in interest" in preserving the plea, or that the prosecution adequately represented Rose's interests during the hearing.  *See, e.g., United States v. Bhatia,* 545 F.3d 757, 759-61 (9th Cir. 2008) (and Supreme Court decisions discussed therein); *Donley v. Hudson's Salvage, LLC,* No. CIV.A. 10-3223, 2011 WL 5930473, at **13-14 (E.D. La. Nov. 29, 2011) (and discussion therein); *Deflon,* 139 N.M.at 640, 137 P.3d at 580 ("Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same. . . .") (internal quotations and citations omitted).  This Court doubts that would any court in this State would allow a motion to set aside a plea hearing to expand to a full-blown litigation proceeding sufficient to protect Rose's interests, even if he had requested the same.

As the Tenth Circuit has noted, the party/privity and opportunity to be heard element are closely related and "[g]enerally, when one is not a party or privy," if follows that "one has not had a full and fair opportunity to litigate an issue." *Kinslow v. Ratzlaff,* 158 F.3d 1104, 1107 (10th Cir. 1998).  The *Kinslow* decision cites other decisions where an officer to a criminal proceeding is later involved in a civil action, and hold that collateral estoppel is not applicable under those circumstances.  Those are sufficiently analogous cases to result in the same outcome here.  *Id.; see also, e.g., Parklane,* 439 U.S. at 327, n.7 ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").

Finally, and independently, due to the perceived deficiencies in Judge Shoobridge's analysis discussed above, the Court declines to give it preclusive effect here.

Wherefore,

**IIT IS HEREBY ORDERED** that Plaintiff's motions for summary judgment and to strike *(Docs. 23, 27, 42)* are **denied**.

*[signature: Karen B. Molzen]*

UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent.