IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL H. HAGAN,

    Plaintiff,

v.                                                        CIV 12-0031 KBM/RHS

TIMOTHY ROSE and
ROSE LAW FIRM P.C.,
a New Mexico professional corporation,

    Defendants.

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Disqualify Counsel (*Doc. 109*) and Plaintiff's Motion to Dismiss Complaint (*Doc. 121*). Pursuant to 28 U.S.C. § 636 and Fed R. Civ. P. 73, the parties have consented to me serving as the presiding judge and conducting all proceedings.

Having reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities, the Court finds that Defendants' Motion to Disqualify Counsel is well-taken and will be granted. Accordingly, Plaintiff's legal counsel, J. Robert Beauvais ("Mr. Beauvais"), will be disqualified, and Plaintiff must notify the Court, *pro se* or through new counsel, by November 1, 2013, if he wishes to withdraw the Motion to Dismiss Complaint previously filed through Mr. Beauvais. If Plaintiff does not so advise the Court, the Motion to Dismiss will be granted, Plaintiff's claims will be dismissed with prejudice, and a final judgment will be entered in favor of Defendants. If, after dismissal of this case, Plaintiff appeals any orders of this Court, he must do so *pro se* or with new counsel of his choosing.

**I.     BACKGROUND**

On January 10, 2012, Plaintiff filed the instant action against Defendants for professional negligence, breach of contract, and breach of fiduciary duty. Plaintiff claims that he incurred damages when he was required to hire a new attorney to correct the legal malpractice of Defendants, his former attorney and law firm in a previous criminal prosecution.  During the course of this legal malpractice action, Defendants have sought to determine the amount of legal fees paid by Plaintiff to his subsequent attorney, Mr. Beauvais, and whether all or part of Mr. Beauvais' compensation may have been a transfer of Plaintiff's halter business, Craigmyle Halters, LLC, to Mr. Beauvais and/or his wife.

At the February 26, 2013 Final Pretrial Conference, Defendants first broached the topic of a business dealing between Plaintiff and Mr. Beauvais. *Doc. 69*.  Mr. Beauvais represented to the Court that he did not have an ongoing business relationship with Plaintiff but that his wife, Kimberly Beauvais ("Mrs. Beauvais") had acquired the Craigmyle Halters trademark from Plaintiff for one dollar ($1.00).  *Doc. 122 at 26:11-27:2*.  At that time, the Court noted its concern about a possible conflict in Mr. Beauvais' continuing representation of Plaintiff and vacated the March trial date*.  Doc. 69, 70.*  Again, in its Order on Plaintiff's First Motion in Limine, the Court expressed "grave concerns" about the potential conflict of interest between Plaintiff and his counsel.  *Doc. 101*.

Thereafter, Defendants sought to reopen discovery for the limited purpose of exploring the fee arrangement and business dealings between Plaintiff and the Beauvais.  *Doc. 104*.  Defendants submitted records obtained from the New

Mexico Public Regulation Commission, which indicate that Mr. Beauvais is the registered agent for the halter business owned by Mrs. Beauvais, and that the business' registered address is Mr. Beauvais' law office.  *Doc. 104, Ex. A.*

In an effort to establish that the subject business transaction was strictly between Plaintiff and Mrs. Beauvais, Mr. Beauvais submits various documents, including: (1) an Order by the United States District Court for the Central District of California in which the court determined that the actual value of the Craigmyle trademark was at least $21,046.12; (2) a Purchase Agreement in which Mrs. Beauvais' company, Lincoln Works, LLC, is the purchaser of Craigmyle Halter, LLC for the purchase price of $1.00 and "other good and valuable consideration"; (3) a Non-Competition Agreement for a period of five (5) years between Plaintiff/Craigmyle Halter, LLC and Lincoln Works, LLC/Mrs. Beauvais; and (4) the Certificate of Organization and Articles of Organization of Lincoln Works, LLC, naming Mrs. Beauvais as the organizer and sole member.  *Doc. 106, Exs. A-D.*  Mr. Beauvais relies upon these documents to support the position that he did not obtain an interest in Plaintiff's halter business.  *See id.*  He argues concurrently, however, that "even if the [C]ourt were to find [that Plaintiff] paid some or all of his fee[s] by a transfer of personal property to his subsequent attorney, that transfer does not negate the damages" suffered by Plaintiff.  *Id.* at 5.

The Court, in its June 4, 2013 Memorandum Opinion and Order, granted Defendants' Motion to Reopen Discovery, finding that there was at least a reasonable inference that the transfer of the Craigmyle trademark to Mrs.

3

Beauvais served as consideration for Mr. Beauvais' representation of Plaintiff and, further, that such a business transaction had significant implications for whether Mr. Beauvais should be disqualified as counsel due to a conflict of interest.  *Doc. 113* at 6. The Court held in abeyance Defendants' subsequently-filed Motion to Disqualify Counsel pending further discovery on the issue.  *Id.* Defendants took the depositions of Plaintiff and Mrs. Beauvais on July 16, 2013.  *Doc. 122, Exs. B, C.*

In their Motion to Disqualify Counsel, now before the Court, Defendants maintain that either 1) the Craigmyle trademark transaction served as consideration for Mr. Beauvais' representation of Plaintiff, meaning that Mr. Beauvais' representations to this Court were untruthful; or 2) that there was inadequate consideration for the transaction between Plaintiff and the Beauvais.  *Doc. 109* at 2-3.  Defendants note that Mrs. Beauvais acquired the Craigmyle trademark for $1.00 when a federal court had, just months before, determined that it was worth at least $21,046.12.  *Id.* at 2.   Defendants submit that a conflict of interest between Plaintiff and the Beauvais has placed Mr. Beauvais in a position that he must "pursue this case in a way that saves his own skin, as opposed to the best interests of his client." *Id. at 3.*

Mr. Beauvais now reveals in his briefing that the consideration for Mrs. Beauvais' acquisition of Plaintiff's halter company was both $1.00 *and* a separate Consulting Agreement, which he provides to the Court.  *Doc. 110* at 4.  Under the terms of the Consulting Agreement, Plaintiff is obligated to provide consulting services to Mrs. Beauvais' halter company in exchange for the payment of

4

$100,000 plus the cost of a new vehicle.  *Doc. 110, Ex. C.*  A handwritten contract term at the end of the Consulting Agreement provides that the agreement "is contingent on [Mrs. Beauvais' company] obtaining interim financing sufficient to place three orders totaling $250,000.00."  *Id.* at 7; *Doc. 122, Ex. C,* at 18:14-17.  Mr. Beauvais does not deny that he drafted the agreements effecting the business transaction between Plaintiff and Mrs. Beauvais.[1]  He insists, however, that a provision concerning independent legal and tax counsel fulfilled his ethical responsibilities to his client.  *Doc. 110* at 4.

At their depositions on July 16, 2013, Plaintiff and Mrs. Beauvais were both questioned about the details of Mrs. Beauvais' acquisition of the Craigmyle trademark and halter business.  *Doc. 122, Ex. B-C.*  Both testified that Mrs. Beauvais acquired the Craigmyle trademark for $1.00 and the halter business for $100,000.  *Doc. 122, Ex. B*, at 52:23-54:1; *Doc. 122, Ex. C,* at 10:22-11:15.  Plaintiff testified that once Mrs. Beauvais was able to get the business to "stand on its own," she would be responsible for securing financing in order to pay him the $100,000 purchase price.  *Doc. 122, Ex. B*, at 54:9-55:5.  Mrs. Beauvais testified in accord -- that the $100,000 would become due to Plaintiff once the business got "off the ground."  *Doc. 122, Ex. C,* at 11:8-15.

Mrs. Beauvais and Plaintiff testified consistently that Mrs. Beauvais has not paid any amount of money to Plaintiff for the purchase of Craigmlye Halters

---

[1]  Mr. Beauvais denies being a member of the LLC.  Yet in the Consulting Agreement under the paragraph entitled "Certificate of Formation," which certifies "that the foregoing operating and consulting agreement is adopted and approved by each member and the consultant,"  just below his wife's signature as "It's [sic] Managing Member," Mr. Beauvais sets forth his signature under "Members: . . . JOINED PRO FORMA."  *Doc. 110, Ex. C* at 7 (emphasis added).

5

other than $1.00 for the trademark.  *Doc. 122, Ex. B*, at 56:11-21; *Doc. 122, Ex. C*, at 17:22-24.  Although the Consulting Agreement is contingent upon Mrs. Beauvais' company "obtaining interim financing sufficient to place three orders totaling $250,000," (*Doc. 110, Ex. C, at 7; Doc. 122, Ex. C,* at 18:14-17), Mrs. Beauvais has not, in fact, attempted to secure financing and has no intention of placing three overseas orders as she and Plaintiff contemplated at the signing of the Purchase and Consulting Agreements.  *Doc. 122, Ex. C,* at 19:3-20:10.  Mr. Beauvais explains in his briefing that "[a]fter investing considerable time and money, it was determined the cost of importing products was prohibitive to sell in an onshore wholesale market.  Consequently, there was no business market which allowed [Mrs. Beauvais' business] to borrow the capital to undertake the business venture."  *Doc. 110* at 4.  Put another way, Mrs. Beauvais decided against performing the obligation upon which the Consulting Agreement is contingent.

Plaintiff and Mrs. Beauvais also testified that Plaintiff owes outstanding legal fees to Mr. Beauvais for his prior legal representation of approximately $100,000.  *Doc. 122, Ex. B*, at 59:23-60:7; *Doc. 122, Ex. C*, at 25:1-25.  According to Plaintiff, he and Mr. Beauvais have not discussed or made demands for the outstanding monies owed in legal fees or business acquisition costs.  *Doc. 122, Ex. B*, at 57:6-12; 60:1-9.

Mrs. Beauvais also testified about negative aspects of her business dealings with Plaintiff.  She indicated that the halter business "did not go over as well as [she] thought."  *Doc. 122, Ex. C*, at 15:12-19.  According to Mrs.

6

Beauvais, "the Craigmyle Halter had a really bad reputation," and Plaintiff's involvement in the company was a negative thing.  *Id.* at 15:12-22.  Mrs. Beauvais also alleged that Plaintiff made misrepresentations to her concerning the halter business before she acquired it.  *Id.* at 41:20-23.  For instance, Mrs. Beauvais testified that Plaintiff represented that she could sell approximately 5,000 to 6,000 halters per month, when, in fact, she sold approximately 300 halters over a thirty-six month period.  *Id.* at 41:7-19.  Mrs. Beauvais testified that she anticipates having a conversation with Plaintiff at some point concerning his alleged misrepresentations.  *Id.* at 42:8-10.

Most telling, in addition to the documents and deposition testimony discussed herein, Defendants submit evidence that Mr. Beauvais sought concurrence from opposing counsel on August 15, 2013, on a Motion to Withdraw as Counsel for Michael Hagan, Plaintiff herein, in a separate matter before the Twelfth Judicial District Court.  *Doc. 122, Ex. D*.  In the proposed Motion to Withdraw, Mr. Beauvais explains that he has experienced a "breakdown in communications with his client" and that his client has refused to make payments toward his legal fees.  *See id.*

On August 3, 2013, this Court granted Defendants' Third Motion in Limine, excluding the testimony of Plaintiff's expert witness, Barry Crutchfield.  *Doc. 119*.  As a result of the exclusion of Plaintiff's expert testimony, Plaintiff concedes that he cannot now prevail on his legal malpractice claim. *Doc. 121* at 1.  Accordingly, he seeks an order dismissing his claims but preserving his right to appeal the Court's Order Granting Defendants' Third Motion in Limine.  *Id.*  However,

7

Defendants oppose dismissal of Plaintiff's claims before the Court decides the pending Motion to Disqualify Counsel.  *Doc. 122* at 2.  They ask the Court to hold in abeyance Plaintiff's Motion to Dismiss until such time as Plaintiff's counsel has been disqualified and Plaintiff has acquired new counsel.  *Id.* at 4.

## II.     LEGAL STANDARD

The Tenth Circuit has held that motions to disqualify counsel "are governed by two sources of authority."  *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1383 (10th Cir. 1994).  First, attorneys are bound by the local rules of the court in which they appear.  *Id.*  In this Court, the New Mexico Rules of Professional Conduct apply.  *See* D.N.M. LR-Civ.83.9.  Second, "because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law."  *Cole*, 43 F.3d at 1383.  "Therefore, motions to disqualify are governed by the ethical rules announced by the national profession and considered 'in light of the public interest and the litigants' rights.'"  *Id.* (quoting *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).

## III.    ANALYSIS

Motions to disqualify counsel typically require written responses and, sometimes, full evidentiary hearings on the issues.  *Weeks v. Independent School Dist. No. I-80 of Oklahoma County, Oklahoma*, 230 F.3d 1201 (10th Cir. 2000).  In this case, however, no evidentiary hearing is necessary, because the parties have thoroughly briefed the issues before the Court, submitting relevant

evidence after the reopening of discovery, and neither party has requested an evidentiary hearing.  *See id.* at 1212.

In deciding Defendant's Motion to Disqualify Counsel, the Court must consider the New Mexico Rules of Professional Conduct as well as ethical standards developed under federal law.  Some courts, including district courts within the Tenth Circuit, hold that counsel should not be disqualified unless the unethical conduct at issue "taints" the lawsuit or legal system.  *See, e.g., W.T. Grant Cov. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976); *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998); *Fed. Deposit Ins. Corp. v. Isham*, 782 F. Supp. 524, 528 (D. Colo. 1992).  The Fifth Circuit, on the other hand, has rejected the so-called "taint standard" in favor of a standard that requires a court to take measures against unethical conduct occurring in connection with any proceeding before it.  *See In re American Airlines, Inc.*, 972 F.2d 605, 610-11 (5th Cir. 1992).

The Tenth Circuit has not squarely addressed the applicable standard for disqualification of counsel.  *See Rubio v. BNSF Railway Co.*, 548 F. Supp. 2d 1220 (D.N.M. 2008).  However, even under the more relaxed "taint standard," disqualification is proper when an attorney's conflict of interest "undermines the court's confidence in the vigor of the attorney's representation of his client."  *See Bd. of Educ. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).  As a result, the Court employs this more relaxed standard and considers whether Mr. Beauvais' actions, with respect to the business transaction between his wife and

Plaintiff, undermine the Court's confidence that Mr. Beauvais can vigorously represent Plaintiff here.

Noting that the New Mexico Rules of Professional Responsibility do not altogether prohibit business transactions between clients and attorneys, Mr. Beauvais maintains that the transaction between Plaintiff and Mrs. Beauvais satisfied applicable ethical rules. *Doc. 110* at 3. New Mexico Rule of Professional Conduct 16-108 prohibits a lawyer from entering into a business transaction with a client or knowingly acquiring an ownership or pecuniary interest adverse to a client unless:

> (1) the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
> (2) the client is advised in writing of the desirability of seeking and is given reasonable opportunity to seek the advice of independent legal counsel on the transaction;
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

NMRA 16-108(A).

Mr. Beauvais maintains that he simply has not entered into a business transaction with a client, because the transaction at issue was strictly between Plaintiff and Mrs. Beauvais. The Court is not persuaded, however, that the analysis ends there. First, Mr. Beauvais has not established that he forfeited any community property interest in profits earned by his wife through her business endeavors, and, further, Mr. Beauvais likely benefits in other manners from successful business acquisitions of his wife and her corresponding financial independence. Second, here, Mr. Beauvais was *directly* involved in the business

transaction between his wife and his client. He introduced Plaintiff to Mrs. Beauvais; he drafted the agreement that set out the terms of the transaction; he was present at the finalization of the Purchase Agreement and Consulting Agreement; and he now serves as the registered agent for his wife's newly-acquired halter business. As a result, the Court's analysis of the transaction between Plaintiff and Mrs. Beauvais is no different than if the transaction were directly between Plaintiff and Mr. Beauvais. "The relation of attorney and client is one of the highest trust and confidence, requiring the attorney to observe the utmost good faith towards his client, and not to allow his private interests to conflict with those of his client." *Van Orman v. Nelson*, 427 P.2d 896 (N.M. 1967). It follows that a lawyer should likewise refrain from representing a client whose interests are adverse to those of his spouse, which are presumably aligned with the lawyer's own interests.

Next, Mr. Beauvais argues that an independent counsel provision renders the transaction in compliance with Rule 16-108. The independent counsel provision, which is found in the Non-Competition Agreement between Plaintiff and Mrs. Beauvais' company, provides as follows: "Each of the parties hereto acknowledges that he/she/it has had the opportunity to seek independent legal and tax counsel to review this Agreement, and to obtain the advice of legal and tax counsel relating thereto. Each of the parties acknowledges that if he/she/it has not employed independent legal and tax counsel to review this Agreement, it has been the choice of such party to forgo advice of legal and tax counsel." *Doc. 106, Ex. C*, at 4. Even assuming that Mr. Beauvais somehow complied with

11

subsection (b) of Rule 16-108 through the inclusion of this provision in the Non-Competition Agreement, he is not thereby exempted from compliance with the other subsections of Rule 16-108.

Subsection (a), for example, requires that the terms of the underlying transaction are fair and reasonable to the client. The New Mexico Supreme Court has reasoned that the relationship of attorney and client, one of trust and confidence, requires that the conduct of attorneys in transactions with their clients must be characterized by absolute fairness, good faith, and honesty. *See Van Orman*, 427 P.2d at 907-08.

Inadequacy of consideration is one factor in assessing the relative fairness of a transaction between attorney and client. *Id.* at 907. Taking Plaintiff and the Beauvais at their word, Plaintiff only received $1.00 in consideration for the transfer of the Craigmyle trademark. Yet, seven months earlier, a federal court determined that the trademark was worth at least $21,046.12. The Court has little difficulty concluding that $1.00 in consideration for the Craigmyle trademark would be both inadequate and unfair to Plaintiff.

Mr. Beauvais attempts to redeem the fairness of the transaction by revealing that the "other good and valuable consideration," not explicitly mentioned in the Purchase Agreement, was a separate Consulting Agreement between Plaintiff and Mrs. Beauvais. Under the terms of this "side agreement," as Mrs. Beauvais has referred to it,[2] Plaintiff is obligated to provide consulting

---

[2] When asked what the "terms of the deal" were, Mrs. Beauvais testified as follows:

> That I bought the trademark for a dollar. And then we had a side
> agreement that he would help me market it. He'd show me how to do it.

12

services to Mrs. Beauvais' newly-acquired halter company in exchange for $100,000 plus the cost of a new vehicle. Notably, however, the Consulting Agreement is subject to a handwritten term, which makes the obligations therein contingent upon Mrs. Beauvais' company "obtaining interim financing sufficient to place three orders totaling $250,000." Mrs. Beauvais has not applied for financing and has no intention of placing the three contemplated orders. Further, Mrs. Beauvais and Plaintiff agree that Mrs. Beauvais is not obligated to apply for financing or to pay Plaintiff the $100,000 until such time as the halter business gets "off the ground" or "stand[s] on its own." Mrs. Beauvais' obligation to pay Plaintiff the agreed upon consideration has not yet been triggered and, in fact, may never be triggered.[3]

Business transactions between attorney and client are closely scrutinized by courts. *Van Orman*, 427 P.2d at 908. Here, the transaction at issue does not withstand such scrutiny. The Court finds that the contract terms, drafted by Mr. Beauvais to effect a business transaction between his wife and his client, are marked by one-sidedness and are seemingly unfair to Plaintiff.

---

> . . . And then, basically, we were going to mass produce it. He was going to go out and basically sell it. And then we would pay for the price of the business.

*Doc. 122, Ex. C*, at 10:20-11:4.

[3] When asked what would happen if the Beauvais never get financing, Plaintiff responded, "Eventually we're gonna have to do something different. I'll have to sell it to somebody else to get my money back or something." *Doc. 122, Ex. B*, at 56:15-18. Then, when asked what would happen if the Beauvais refuse to give back the halter business, Plaintiff testified that he hoped it would not have to result in him suing them. *Id.* at 60:16-61:2.

13

Furthermore, even if the terms of business transaction between Plaintiff and Mrs. Beauvais were reasonable and fair, significant questions linger as to the likelihood that Mr. Beauvais will continue to represent Plaintiff with the appropriate effort and vigor.  Mrs. Beauvais holds the position that Plaintiff made substantial false representations to her concerning the value of the business at contract formation, and a confrontation between the Beauvais and Plaintiff concerning such alleged misrepresentations seems to loom on the horizon. Additionally, the Consulting Agreement's contingency is indefinite and essentially illusory and generates uncertainty as to any obligations of Mrs. Beauvais.  If Mrs. Beauvais' obligation to pay Plaintiff under the Consulting Agreement is never triggered, she may hold the position that she acquired Plaintiff's halter business, trademark, and a 5-year Non-Competition Agreement for a mere dollar.  Mrs. Beauvais, and by extension Mr. Beauvais, hold a position that is dramatically adverse to Plaintiff.

The temporal relationship between Plaintiff's transfer of his halter business and Mr. Beauvais' legal representation of Plaintiff also raises obvious questions as to the true consideration received by Plaintiff for his halter business.  As the Court has previously noted, Mrs. Beauvais' halter company was incorporated immediately after Mr. Beauvais assumed representation of Plaintiff in the underlying criminal case.  Plaintiff and the Beauvais' assurances aside, if Mrs. Beauvais actually acquired the halter business in partial payment for Mr. Beauvais' legal services to Plaintiff, for which Plaintiff apparently owes Mr.

Beauvais a nearly identical sum of money (i.e. $100,000), Mr. Beauvais has violated a different ethical rule.

New Mexico Rule of Professional Conduct 16-303 provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer" or "offer evidence that the lawyer knows is false."  NMRA 16-303(A).  Mr. Beauvais has represented to this Court that the halter business transaction was not made in exchange for his legal services to Plaintiff, and both Mrs. Beauvais and Plaintiff have corroborated his position through their deposition testimony.  Nevertheless, given the timing and identical outstanding balances due to Plaintiff and Mr. Beauvais, the Court has serious reservations that Mr. Beauvais has fulfilled his duty of candor and truthfulness to the Court.

Finally, if a "breakdown in communications" between Plaintiff and Mr. Beauvais and Plaintiff's refusal to make payments toward his legal fees have necessitated Mr. Beauvais' withdrawal as counsel in a separate matter, it is not apparent why these communication difficulties and outstanding legal fees would not also dictate Mr. Beauvais' withdrawal as counsel here.  Mr. Beauvais has failed to offer any explanation or distinguishing factors to assure the Court that he can continue to vigorously represent Plaintiff in this case.[4]

In sum, whether Mr. Beauvais participated in a seemingly unfair business transaction between his wife and his client or whether he lied to this Court about

---

[4] Although Plaintiff indicates in his Notice of Completion of Briefing of his Motion to Dismiss that a reply was filed with this Court on September 4, 2013 as Document 123, no such reply appears on the docket, and Document 123, instead, is Plaintiff's Notice of Completion of Briefing.  *Doc. 123.*

the actual consideration for that business transaction, he has behaved in a manner that raises serious ethical implications. Such conduct by Mr. Beauvais, in combination with the adverse positions held by Plaintiff and the Beauvais as to the performance and effect of their underlying business transaction, undermines the Court's confidence in the vigor of Mr. Beauvais' continued representation of Plaintiff. Balancing society's interest in ethical conduct, Plaintiff's right to select his own counsel, and any hardship that disqualification may impose upon the parties and the judicial process, the Court concludes that disqualification is proper and necessary.

## IV. CONCLUSION

For all of these reasons, the Court concludes that Mr. Beauvais should be disqualified as counsel for Plaintiff and that, should Plaintiff wish to appeal any decisions of the Court in this case, he should do so either with new counsel of his choosing or *pro se*.

Wherefore,

**IT IS HEREBY ORDERED** that Defendants' Motion to Disqualify Counsel (*Doc. 109*) is **granted**.

**IT IS FURTHER ORDERED** that Mr. Beauvais shall immediately notify Plaintiff that he has been disqualified as counsel in this matter, shall send via U.S. Mail a copy of this Memorandum Opinion and Order to Plaintiff at his current mailing address, and shall file a certification of that mailing including the last known address for Mr. Hagan, which the Clerk shall then enter on the docket.

**IT IS FURTHER ORDERED** that if Mr. Hagan does not notify the Court, either *pro se* or through alternate counsel, by Friday, November 1, 2013, that he wishes to withdraw his Motion to Dismiss Complaint, his Motion to Dismiss (*Doc. 121*) will be granted and his claims will be dismissed with prejudice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE